ROBERT A. ARENDT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Arendt v. Commissioner
Docket No. 30182-91
United States Tax Court
T.C. Memo 1994-443; 1994 Tax Ct. Memo LEXIS 470; 68 T.C.M. (CCH) 651; August 30, 1994, Filed *470 Decision will be entered for petitioner. For petitioner: Jon R. Vaught. For respondent: Thomas M. Rohall. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income taxes for 1983, 1984, 1985, 1986, and 1987 as follows: Additions to Tax
Sec.
Sec.
Sec. Sec. Sec.
Year
Deficiency
6653(a)(1)
6653(a)(2)
6653(a)(1)(A)
6653(a)(1)(B)
6661
1983
$ 6,970
$  349
[1]
- -
$ 1,743
1984
21,294
1,065
[1]
- -
5,324
1985
19,709
985
[1]
- -
4,927
1986
9,146
- -
$ 457
[1]
2,287
1987
9,190
- -
460
[1]
2,298
The issues for decision are: (1) Whether petitioner had unreported income for the years at issue in the amounts determined by respondent from the cultivation and sale of marijuana. We hold that he did not. (2) Whether petitioner is liable for the additions to tax for the years at issue under sections 6653 [1] and 6661. We hold that he is not. (3) Whether additions to tax for negligence and substantial underpayment for the years at issue were discharged due to petitioner's subsequent *471 discharge in bankruptcy. We hold that since petitioner is not liable for the taxes or the additions to tax for the years at issue, this issue is moot. FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition herein was filed, petitioner resided at 5201 Feliz Creek, Ukiah, California. Petitioner is presently married to Sandra Matheny, but for the years at issue, petitioner was married to Marcia Gail Viera, and timely filed joint Federal income tax returns with Marcia Gail Viera for all years at issue. Marcia Gail Viera has not been named in the notice of deficiency by respondent and is not a party in this case; therefore, all references to petitioner are to Robert A. Arendt. *472 Petitioner was a self-employed carpenter during the years at issue, and reported his earnings from such profession on Schedule C for each of the years at issue. On their joint Federal income tax returns for the taxable years 1984 through 1987, petitioner and Ms. Viera reported income from the following sources: 1984
1985
1986
1987
Wages (former Mrs. Arendt-
$   785
$ 1,294
$  416
$ 2,493
now Ms. Viera)
Interest Income (joint)
796
703
291
327
Miscellaneous Income
0
0
2,315
0
Gross Receipts - Schedule C -
Carpenter (Mr. Arendt)
4,920
8,650
6,175
6,250
Total Reported Gross Income
$ 6,501
$ 10,647
$ 9,197
$ 9,070
The joint Federal income tax return filed by petitioner and Ms. Viera for the taxable year 1983 could not be located by the examining revenue agent, but a transcript of account indicated that they reported an adjusted gross income for that year of $ 7,146. This reported income is not significantly different from the income reported for each of the taxable years 1984 through 1987. Petitioner and Ms. Viera were divorced on October 11, 1989. Pursuant to the Judgment of Dissolution of Marriage, petitioner was awarded the family residence *473 situated at 4261 Moose Road in Ukiah, California. Ms. Viera was awarded all cash, bank accounts, and other liquid assets then in her possession, as well as $ 41,750 from petitioner representing her community interest in the residence. The Moose Road property consists of a residence located on approximately 40 acres split off from what is known as the McNab Ranch. The land was acquired by petitioner in 1977, in part with $ 13,000 of the purchase price financed through a 10-year loan from the seller. In 1978 petitioner borrowed $ 10,000 from his father to start construction of the residence. Petitioner himself built the residence and other improvements on the property over a number of years. Sometime before May 23, 1989, petitioner and Ms. Arendt separated. Petitioner moved to 5201 Feliz Creek where he lived with Sandra Matheny, now his wife. On May 23, 1989, officers of the Mendocino County Sheriff's Office, acting on a tip from a confidential informant that petitioner was growing marijuana, served and executed a search warrant for 5201 Feliz Creek. The officers seized 64 marijuana plants, some marijuana seeds, and a pipe. Based on the informant's tip and the evidence seized, *474 a second search warrant was obtained and executed for the Moose Road property, which was still owned by petitioner. During that search, officers seized 5 grams of marijuana, some marijuana seeds, some calendars and notebooks, and photographs. The photographs purported to show a prior marijuana site just above the Moose Road residence. Petitioner was arrested and criminal charges were brought against petitioner and Sandra Matheny as a result of the searches and seizures; however, the charges were dismissed by the District Attorney's office prior to trial. The notebooks and calendars seized during the search of the Moose Road property contain entries in the handwriting of petitioner and Ms. Viera which appear to report three different types of drug transactions. The entries are grouped according to year and cover the period 1983 through 1987. First, entries are found in the notebooks which list a name (usually a first name), a quantity, and a price. Second, entries are found that indicate only a name and a quantity. Third, there are entries which mention only a price. The notebooks also record various notations of chores, appointments, errands, and other miscellaneous entries. *475 In addition, the notebooks contain diagrams of garden layouts, showing water supplies and other details. The garden layouts are generally distinguished by references to the words "vegetables," "trees," or "crop". One of the notebooks also contains references to names commonly associated with different varieties of marijuana, e.g., "sensemilla," "Oaxacan," and "Columbian" [sic]. The daily activities recorded in the calendars and notebooks generally refer to chores such as planting, watering, fertilizing, sexing, harvesting, and cleaning. There are also entries in the notebooks by petitioner indicating that he was attempting to camouflage his garden. At the time of his arrest petitioner admitted to the arresting officer, Carol Walsh, that the 64 marijuana plants were his. He told Officer Walsh that he owed his ex-wife $ 40,000 and that he intended to sell the marijuana to help pay off his obligation to her. Petitioner denied ever having sold any marijuana in the past, although he did admit that he had considered it. Petitioner admitted that during the years at issue, he had grown marijuana for his own consumption. Petitioner eventually paid the obligation owed to his ex-wife *476 through a loan from his father. After the seizure of the materials, Officer Walsh contacted respondent and turned over the notebooks and calendars to Revenue Agent Frank Thatcher for analysis. Sometime thereafter, Agent Thatcher submitted the seized records to the Federal Bureau of Investigation (hereinafter FBI) for examination. The FBI reported that the records submitted to them were consistent with those of a business that sold marijuana. Based on this report, and market value surveys prepared by the Drug Enforcement Agency (hereinafter DEA), Agent Thatcher prepared a statutory notice of deficiency using information contained in the notebooks and calendars. The notice of deficiency was based entirely upon the information contained in the notebooks and calendars seized from petitioner and nothing else. Agent Thatcher did not perform a net worth, expenditure, or source and application method of income analysis or a bank deposit income analysis for the years in issue. On October 2, 1991, respondent issued a statutory notice of deficiency to petitioner. In the notice, respondent determined deficiencies in and additions to petitioner's 1983, 1984, 1985, 1986, and 1987 Federal *477 income taxes based on amounts allegedly received by petitioner from marijuana sales. OPINION Petitioner contends that the notice of deficiency at issue herein is arbitrary and excessive, as there is no substantive evidence linking him to an illegal income-producing activity, and no substantive evidence that he received and failed to report income from the alleged illegal activity. Therefore, petitioner contends, the presumption of correctness normally accorded respondent's deficiency notice is not available, and the burden of going forward with evidence linking petitioner to a tax-generating activity is shifted to respondent. Moreover, since respondent has failed to come forward with such evidence, respondent's determinations should not be sustained. Petitioner ordinarily has the burden of showing error in respondent's deficiency determination. Rule 142(a); ; . However, a showing that the notice of deficiency is arbitrary and excessive within the rule of , *478 has the effect of shifting the burden of going forward with the evidence to respondent. ; , revd. in part and affd. in part ; . Such a showing, however, does not shift the ultimate burden of proof -- it remains with the taxpayer. ; ; ; accord . In order for the notice of deficiency to be accorded the presumption of correctness in cases involving unreported income allegedly derived from illegal activities, the Commissioner must produce "some substantive evidence * * * demonstrating that the taxpayer received unreported income." , *479 affg. ; ; , revg. . Once the Commissioner has carried the initial burden of introducing some substantive evidence linking the taxpayer with an income-producing activity, the taxpayer has the burden to rebut the presumption of correctness of the Commissioner's deficiency determination by establishing by a preponderance of the evidence that the deficiency determination is arbitrary or excessive. ; see also ; , affg. ; ; . Since an appeal in this case lies in the Ninth Circuit, *480 we look to cases decided therein for guidance. See , affd. . The Court of Appeals for the Ninth Circuit has held that a "deficiency determination which is not supported by the proper foundation or substantive evidence is clearly arbitrary and erroneous." (fn. ref. omitted). In , and , the Court of Appeals also explicitly held that the Commissioner's determinations must be supported by "some substantive evidence" demonstrating that "the taxpayer received unreported income." ; , (citing ). In the instant case, respondent argues that the property seized from petitioner's residences during *481 the searches in 1989 establishes that petitioner was in the business of cultivation and sales of marijuana during the years at issue. Respondent further argues that the determination that petitioner had unreported income from marijuana sales was rationally based, because it was reconstructed from petitioner's personal notations in his own notebooks and calendars that the FBI report [2] had concluded were consistent with records of a business that sold marijuana, as well as using reliable marijuana sales price tables published by the DEA to verify income from the marijuana sales. Relying on , respondent argues that the required minimal evidentiary foundation is supplied when the Commissioner introduces some substantive evidence demonstrating that the taxpayer received unreported income.
*482 Respondent's reliance on Stonehill is misplaced. In Stonehill, the Court of Appeals for the Ninth Circuit distinguished , noting that there the Commissioner had offered no evidence showing that Weimerskirch had ever sold any heroin, or that he had received any unreported income. Therefore, the Commissioner was not entitled to rely solely on the presumption of correctness of the notice of deficiency. In Stonehill, however, the Commissioner presented overwhelming evidence demonstrating that the taxpayers had actually received millions of dollars of unreported income, while in the instant case, respondent has failed to show that petitioner actually received any income. The court in Stonehill noted that the assessments "stood securely upon a foundation of concrete evidence;" therefore, the court held, "the presumption of correctness was applicable." . Respondent further argues that the Commissioner has broad authority to reconstruct a taxpayer's income by whatever means it deems appropriate, as long as it is not arbitrary. *483 Sec. 446(b); , affg. . In support of this argument, respondent cites our earlier decisions in , , and . Each of these decisions holds that the Commissioner may reconstruct income through the use of notebooks, testimony, or evidence of quantity sold. Again, respondent's reliance on the cited cases is misplaced. When a determination is made that there has been an alleged receipt of unreported income from illegal activities such as drug sales, the determination in the notice of deficiency must be supported by a minimum of substantive evidence that the taxpayer either sold the drugs, or received unreported income from the drug sales. In each of the cases cited by respondent, evidence offered by the Commissioner clearly connected the taxpayers to the income that formed the basis of the notice of deficiency. *484 In Scott, the taxpayer conceded that the transferor (her deceased son) was a retail dealer of marijuana. In addition, the son's apartment was found to contain a substantial amount of marijuana, $ 10,000 in cash, and records of his drug dealings. In Schmitz, the taxpayer admitted to engaging in the sale of illegal drugs and not reporting the resulting income received from such sales. The issue decided there involved the correct method to be used to reconstruct the unreported income. In Caffery, the taxpayer admitted receiving unreported income from the importation of marijuana after a witness for the Commissioner testified that he personally paid the taxpayer the income in cash. Respondent here has not introduced admissible, substantive evidence clearly linking petitioner to the sale of marijuana, or to the receipt of unreported income from marijuana sales. Respondent's evidence, at most, shows that petitioner grew marijuana and tracked local prices during the years at issue. Petitioner considered selling marijuana at some future time. The record has not established that petitioner actually sold drugs during the years at issue or received any taxable income therefrom. *485 Respondent did not perform any net worth, expenditure, source and application, or bank deposit income analysis to show that petitioner had unreported income. Accordingly, we find that the notice of deficiency is arbitrary and excessive and not entitled to the presumption of correctness. Respondent failed to go forward with any probative evidence linking petitioner to a tax-generating act; i.e., the alleged receipt of income from the sale of illegal drugs. Therefore, it follows that petitioner must prevail on this issue. It further follows that petitioner is not liable for the additions to tax under sections 6653 and 6661, and that the issue of whether those additions to tax were discharged in bankruptcy is thus moot. Accordingly, respondent's determinations as reflected in the notice of deficiency for the taxable years 1983, 1984, 1985, 1986, and 1987 are not sustained. To reflect the foregoing, Decision will be entered for petitioner.
Footnotes
1. 50 percent of the interest on the entirety of the deficiency. ↩
1. All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Counsel for petitioner objected to the admission of the FBI report as constituting inadmissible hearsay to the extent that the report was offered to prove petitioner was in the business of selling marijuana. Respondent asserted the report was being offered only for the limited purpose of showing upon what basis the revenue agent prepared the notice of deficiency. Counsel for respondent, Mr. Rohall, made the following statement: MR. ROHALL: Your Honor, at this point I would like to have Exhibit AD entered into evidence. It is not offered for the truth of the matter asserted, but merely offered to show what the notice of deficiency was partly based upon, and is not offered for the truth of the matter asserted.
After review, the Court responded: THE COURT: * * * It's clear that the FBI report is not admissible as substantive evidence, but I think it is admissible to show how the notice of deficiency was put together. We've had a contention by the Petitioner that the burden of proof should be shifted in this case, and one of the things that I have to look at to decide on that is how the notice was put together, how the gov -- what information the government relied on when it made the notice. So I'm going to allow the testimony for that purpose.↩